UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

IN RE:
CENTRO TOMOGRAFICO DE P.R., INC.
    Debtor,

CENTRO TOMOGRAFICO DE P.R., INC.,
    Plaintiff,

v.

PRESBYTERIAN COMMUNITY HOSPITAL,
INC.,
D/B/A ASHFORD PRESBYTERIAN
COMMUNITY HOSPITAL,
    Defendant.

CIVIL NO. 97-1890(PG)
BANKRUPTCY NO. 97-00798

## OPINION AND ORDER

Presbyterian Community Hospital, Inc., (hereinafter the Hospital) has filed an appeal from the bankruptcy court's order of April 18, 1997 suspending all the proceedings in the case pursuant to 11 U.S.C. §305 and ordering the parties to submit to arbitration.

### Facts

The Presbyterian Community Hospital, Inc., is the owner and operator of a hospital known as Ashford Presbyterian Community Hospital. Centro Tomográfico de Puerto Rico, Inc., (hereinafter referred to as "CT") is a corporation authorized to carry out radiological and medical imaging procedures, studies, research and related tasks using high technology equipment. CT operated the Computerized Tomography Services within the premises of the




AO 72A
(Rev. 8/82)

Civil No. 97-1890(PG)  Page 2
Bankruptcy No. 97-00798

Presbyterian Hospital. For several years, CT operated its business in an area located on the first floor of the Hospital (old premises) pursuant to an agreement signed in 1989 which had a term of 5 years duration and two options to extend the agreement of 5 years each. On February 1996 the Hospital informed CT that the contract which it understood to have been renovated from month to month, would not be renovated and that CT should leave the premises by April 30, 1996. CT answered that unless Hospital paid a pending debt it would not move. During the month of April and May 1996, letters were exchanged claiming different amounts as to the debt owed. The Hospital reiterated that CT should move by June 1st or the rent would increase to $25,000.00 until December 31, 1996 and from then on a monthly rate of $36,000.00.

On July 1996 the Hospital and CT entered into negotiations for the lease of new premises, the "Antiguo Edificio de Enfermería" ("new premises").

As part of the negotiations the parties exchanged drafts of the proposed agreement. Sometime between September and October 1996 the Hospital allowed CT to perform reconstruction work on the new premises. However the Hospital did not grant permission to operate the new premises until the agreement was approved and signed by the Hospital's Board of Directors.

Civil No. 97-1890(PG)  Page 3
Bankruptcy No. 97-00798

Sometime before January 8, 1997 CT began operating in the new premises causing the Hospital to cut the electrical supply. On January 29, 1997 CT filed for relief under Chapter 11 of the Bankruptcy Code. On January 31, 1997, CT, as debtor, filed an adversary proceeding against the Presbyterian Hospital seeking a temporary restraining order, preliminary and permanent injunctive relief. The Bankruptcy Court held a hearing on February 12, 1997 wherein the Hospital agreed to reconnect the electrical supply to the new premises until the case was finally resolved. On two occasions the Hospital moved the Bankruptcy Court to enter a preliminary injunction against CT because it had been providing services through physicians who were not members of the Medical and Dental Staff of the Hospital and for failure to provide services to a Hospital patient due to economic reasons.

On April 18, 1997, the Bankruptcy Court entered an Opinion and Order concluding that the 1989 agreement was binding between the parties and ordering them to submit all the controversies to an arbitration panel. Proceedings in the case were suspended pursuant to 11 U.S. §305. The Hospital now seeks leave to appeal the April 18, 1997 Opinion and Order pursuant to 28 U.S.C. §158(A) and Federal Bankruptcy Rules 8002 and 8003.

AO 72A
(Rev. 8/82)

Civil No. 97-1890(PG)  Page 4
Bankruptcy No. 97-00798

CT filed a motion to dismiss the appeal based on *inter alia*, the argument that the appeal from the interlocutory order compelling arbitration is barred by the Federal Arbitration Act. Another argument raised is that the court should not grant leave to appeal the interlocutory order under 28 U.S.C. §188(a) because the order does not involve a controlling question of law, there is no substantial ground for difference of opinion and, especially, because the order does not advance the ultimate termination of the litigation.

The Hospital opposes the motion alleging that the order is not barred by the Federal Arbitration Act because the 1989 agreement referring the parties to arbitration did not govern the use and operation of the new premises so any controversies over the lease of the new premises was not subject to arbitration. The Hospital further argues that a reversal of the Bankruptcy Court's Opinion and Order will practically finish all the controversies between the parties.

### Discussion

As a threshold matter the Court must first consider whether it can exercise jurisdiction over the Bankruptcy Court's order directing arbitration to proceed. See Petralia v. AT&T Global Information Solutions Co., 114 F.3d 352, 353-54 (1st Cir. 1997).

Civil No. 97-1890(PG)                                                    Page 5
Bankruptcy No. 97-00798

A district court has jurisdiction to hear appeals from either final or interlocutory orders of the Bankruptcy Court. 28 U.S.C. §158(a). An aggrieved party may appeal "from the final orders, judgments, and decrees" of a bankruptcy court as a matter of right pursuant to 28 U.S.C. §158(a)(1). On the other hand, a district court, in its discretion, may grant leave to appeal "other interlocutory orders and decrees" of a bankruptcy court. 28 U.S.C. §158(a)(3). The bankruptcy court's order at issue herein is interlocutory.

"Unfortunately, there are no standards set out either in the statutes or the rules governing a district court's exercise of its discretionary power to grant leave to appeal an interlocutory order of a bankruptcy court." In re Williams 215 B.R. 289, 297 (D.R.I. 1997) (citing In re American Colonial Broad Corp., 758 F.2d 794, 801 n.7 (1st Cir. 1995)).

Federal Courts have analogized the standards governing permissive appeals under § 158(a)(3) to the procedures for certification of interlocutory appeals pursuant to 28 U.S.C. §1292. Id at 297 n.6 (see cases cited therein).

Pursuant to section 1292(b), an appeal may be taken from an interlocutory order only when the order involves (1) a controlling question of law (2) as to which there is substantial ground for a

Civil No. 97-1890(PG)                                                    Page 6
Bankruptcy No. 97-00798

difference of opinion, and (3) an immediate appeal may materially advance the ultimate termination of the litigation. <u>In re Bradford</u>, 192 B.R. 914, 916 (E.D. Tenn. 1996).

First, "an order pertains to a controlling question of law if either (1) reversal of the bankruptcy court's order would terminate the action, or (2) determination of the issue on appeal would materially affect the outcome of the litigation. Second, for there to be substantial grounds for difference of opinion, the issue must involve more than strong disagreement between the parties, although this prong will be satisfied if the issue is difficult and of first impression. Finally the appeal must materially advance the ultimate termination of the litigation..." <u>In re Alexander</u> 248 B.R. 478, 482 (S.D.N.Y. 2000) (<u>internal quotations and citations omitted</u>). Appellant, the Hospital bears the burden of establishing exceptional circumstances warranting review of an interlocutory order. <u>In re Brandford</u>, 192 B.R. at 916.

A reversal of the bankruptcy court's decision would definitely affect the outcome of the litigation. If the court were to decide that the bankruptcy court's findings were clearly erroneous, then there would be no arbitration agreement for the bankruptcy court to enforce because arbitration is a creature of contract. <u>Emery Air Freight Corp. v. Local Union 295</u>, 786 F.2d 93, 96 (2nd Cir. 1986)

Civil No. 97-1890(PG)                                                    Page 7
Bankruptcy No. 97-00798

citing <u>United Steelworkers of America v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 582 (1960)).

Furthermore, there is substantial ground for difference of opinion as to whether the dispute between plaintiff and defendant was one arising out of the 1989 agreement and therefore arbitrable. If the court finds that it is not then the bankruptcy court would lack authority to compel the Hospital to arbitrate the dispute.

Finally, the appeal might materially advance the disposition of the bankruptcy case because the basic reason for filing the bankruptcy petition was the controversy presented to the bankruptcy court on February 12, 1997. Therefore, the Court **GRANTS** the Hospital permission to appeal the Bankruptcy Court's Opinion and Order of April 18, 1997.

## Discussion

The central issue in this advisory proceeding is: whether the dispute between CT and the Hospital concerning the negotiation of new premises is a dispute "arising out of and about" the 1989 Agreement and therefore arbitrable under Article 17 of the same.

The Hospital claims the dispute is wholly independent of the 1989 agreement and is based on precontractual negotiation for a new contract. The Hospital was allegedly unaware of the existence of the 1989 agreement during the precontractual negotiations of the new

Civil No. 97-1890(PG)  Page 8
Bankruptcy No. 97-00798

premises which began in the summer of 1996. It claims that it was under the impression that CT was operating the old premises under a 1984 agreement which had expired and was renovated on a month-to-month basis. CT avers that the 1989 agreement covers all their relations until 2004.

The Bankruptcy Court concluded that the 1989 agreement was a signed valid contract between the parties. The Court found the Hospital's allegations that they were unaware of the 1989 agreement and the Hospital's accusations that CT "secretly relied" on the agreement during the negotiations as totally meritless. The Court further sustained that the 1989 agreement provided that any conflict that should arise from the agreement should be sent to arbitration and that the current conflict between the parties is precisely over the contract. The court stayed proceedings under 11 U.S.C. §305 pending arbitration of the dispute.

Initially the Court observes that there is a strong policy in the federal courts favoring arbitration and that doubts are to be resolved in favor of arbitration unless the court can state with "positive assurance" that arbitration of the dispute was not intended by the parties. See Becker Autoradio U.S.A. Inc. v. Becker Autoradiowerk, 585 F.2d 39, 47 (3rd Cir. 1978). However the duty to arbitrate is contractual in nature and a court must determine whether

there is an arbitration agreement to enforce. <u>Warrior & Gulf</u>, <u>supra</u>, 363 U.S. at 582. The Hospital acknowledges that the 1989 agreement has an arbitration clause. However, it claims that the dispute at issue herein is totally independent of the 1989 agreement. Therefore, the controversy centers on whether the dispute as to the lease of the additional space and the services to be provided therein arise out of the 1989 Agreement.

Clause 23 of the 1989 agreement provides:

"The parties clarify that initially the present contract will only apply to computerized tomographic services. When the magnetic resonance equipment is installed, the Hospital will provide a minimum of 1,000 square feet of additional space. The space to be provided could be in the parking of the Hospital's faculty or if this alternative is not possible the Hospital will provide a space with a minimum of 2,600 square feet in another place of the Hospital. The construction costs and remodeling of the additional space to be provided shall be CT responsibility. When the additional space is used the rent shall be adjusted in such a way

Civil No. 97-1890(PG)  Page 10
Bankruptcy No. 97-00798

    that the additional space shall pay the same rent paid per square feet as the original space."

  Clause 7 states that the contract will be in effect for 5 years with the option on the part of CT to extend the same for two periods of 5 years that is until 2004. CT had the option to review the agreement on 1994 and apparently it did for their relationship established in the 1989 agreement continued to exist after the expiration of the first 5 year period. CT claims the agreement is to continue up to 2004. The subject of additional space to be provided by the Hospital for new services is dealt with in the 1989 agreement. The issues herein presented all arise in the course of and during the on-going relationship between CT and the Hospital which relationship was established and governed by the 1989 agreement. The dispute as to whether the use and operation of the new or additional premises is governed by the 1989 agreement or is a new agreement "arise out" of the relationship established in the 1989 agreement. The Court agrees with the Bankruptcy Court that the issues herein presented "arise out" of the 1989 Agreement and are thus arbitrable. However, the Court need not and should not decide whether the negotiations in relation to the use and operation of the new premises is governed by the 1989 agreement or by a new agreement. It is for the arbitrator

to resolve all such matters between the parties since the dispute arises out of, or is about, the 1989 Agreement. Thus, it is for the arbitrator to determine whether the 1989 agreement controls the relationship between the parties or if a new agreement has been entered into by the parties. The Court's task is completed once it determines that the dispute "arise out of" or is "about" the 1989 Agreement. Cf. Becker Autoradio, supra.

For the foregoing reasons the Court hereby **DISMISSES** the appeal filed by defendant, Presbyterian Community Hospital, Inc.

**IT IS SO ORDERED.**

San Juan, Puerto Rico _April 20_, 2001.

JUAN M. PEREZ-GIMENEZ  
U.S. District Judge